(64 App. Div. 437.)

## VAN SICLEN et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   October 11, 1901.)

ORAL LEASE—NUISANCE—INJURY TO PROPERTY—RIGHT OF ACTION BY LANDLORD.
    A father renting his farm to his son by oral agreement at a nominal
    rent, the son being in possession and cultivating the property, has a mere
    reversionary interest, and cannot recover for a nuisance temporarily
    obstructing access to the property.
    Goodrich, P. J., dissenting.

Appeal from special term, Queens county.

Action for an injunction and for damages from a nuisance by Abraham Van Siclen and another against the city of New York. From so much of a judgment of the special term (66 N. Y. Supp. 555) in favor of plaintiffs as awards them damages, defendant appeals. Modified.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

William J. Carr (Louis H. Hahlo, on the brief), for appellant.
Frank Harvey Field, for respondents.

WOODWARD, J.   The plaintiffs are the owners of lands upon opposite sides of Lincoln avenue, in the borough of Queens, formerly in the town of Jamaica.  Before the town became part of the city of New York, a trunk sewer had been constructed in Lincoln avenue, and after the town became a part of the present city a deep trench was dug by the city authorities in the avenue opposite the plaintiffs' lands for the purpose of repairing the sewer.   This trench obstructed the highway in front of plaintiffs' lands, causing a nuisance, to abate which this action was brought.   The learned court at special term (66 N. Y. Supp. 555) found that the obstruction of the highway amounted to a public nuisance, by reason of which each of the plaintiffs had sustained injury, and granted injunctive relief perpetually restraining the defendant from further maintaining the obstruction. Damages were awarded against the defendant in favor of the plaintiff Abraham Van Siclen in the sum of $2,850, and in favor of the plaintiff James Van Siclen in the sum of $500.   The defendant appeals only from so much of the amended judgment as awards to the plaintiffs the sums above mentioned and so much of the judgment as grants to the plaintiffs an additional allowance of 5 per cent.

No appeal having been taken from that part of the judgment which awards injunctive relief, we may assume that the nuisance has been abated.   It may also be assumed, in view of all the facts, that the nuisance was of a temporary nature.   Counsel for the defendant contends that the plaintiff Abraham is not entitled to any damages, because he was not in possession of the property, and did not have the beneficial enjoyment thereof.   No authorities are cited for this contention, but that Abraham was not in possession of the farm at the periods in question is evident from his own admissions on the witness stand, as follows:

"When I speak of my son's farm, I mean the farm that is owned by me, and occupied by my son.  He pays me rent.  He pays me the same rent

72 N.Y.S.—14

now that he did two years ago. The rent has never been changed. He pays me a nominal rent. He has paid me the same rent all along. They hire all my land. I gave up farming. Four years ago I gave up the farm. * * * I am not doing any business myself at all. My son is doing it. * * * My sons do not work my farm on shares for me; they hire it of me,—hire the farms of me."

The existence of a written lease does not appear, but the sons at least must have been tenants at will, and therefore entitled to notice to quit before termination of the tenancy. Larned v. Hudson, 60 N. Y. 102. According to Abraham's own testimony, the sons were in possession during the entire period of the nuisance, and he therefore is limited to his remedy for injury to the reversion, the general rule being that a reversioner cannot maintain an action in respect of a temporary nuisance. As has been said, "The tenant alone is affected by a mere transitory injury to, or one that merely affects the present right of enjoyment of, the premises." 2 Wood, Nuis. (3d Ed.) § 827. In Kernochan v. Railroad Co., 128 N. Y. 559, 29 N. E. 65, after citing with approval Bedingfield v. Onslow, 3 Lev. 209, which, with Baxter v. Taylor, 4 Barn. & Adol. 72, held that in case of nuisance the landlord has his remedy for injury to the reversion, the tenant for injury to the possession, the court say (page 566, 128 N. Y., and page 67, 29 N. E.):

"A reversioner, however, who by his lease has vested the immediate right of possession of the property in the lessee, sustains no legal injury from mere temporary or casual trespasses on the land. Such wrongs affect the possession merely, and are to be redressed at the suit of the tenant."

The same court, in Hine v. Railroad Co., 128 N. Y. 571, 574, 29 N. E. 69, say:

"The owner of the property has his remedy for the injury done to the inheritance by a trespasser, as the tenant has his remedy for any injury done to the possession. In either case it is a matter of proof as to the damage sustained by the particular complainant, and neither litigant is the representative of the other in an action of trespass."

In our view of the situation, the cases cited by counsel for the respondents are not in point, for the reason that they refer to plaintiffs who were both owners and in possession of the properties in question, or to plaintiffs who, though landlords, were complaining of nuisances permanent in character and injurious to the reversion. For these reasons the award of damages to Abraham seems improper.

The plaintiff James was both owner and in possession of the land as to which his claim was made, and the award to him does not appear excessive.

The judgment appealed from should be modified by striking out the award of damages to Abraham Van Siclen and the award of additional allowance, and, as modified, affirmed, without costs of this appeal to either party. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). I cannot concur in the opinion of my associates. The learned corporation counsel states in his brief, and stated orally on the argument, that the existence of the nuisance

was admitted, but contended that an erroneous rule was adopted at special term (66 N. Y. Supp. 555) as the measure of damages, and that the amount of damages was excessive. The measure of damages adopted by the court was "the depreciation of the rental value of the plaintiffs' property, occasioned by the nuisance." Two cases are cited,—Francis v. Schoellkopf, 53 N. Y. 152, and Colrick v. Swinburne, 105 N. Y. 503, 12 N. E. 427. Apparently the corporation counsel does not attack the correctness of this rule in cases where there has been an actual loss of rentals, but contends that the plaintiff Abraham Van Siclen is not entitled to any damages because he was not in possession of the property, and did not have the beneficial enjoyment thereof, and because he has suffered no loss of rental value. Assuming the correctness of his premises, which are derived from the testimony of Abraham that his son occupied and cultivated the farm, paying only a nominal rent, we are brought to the question whether in such a case the measure of damages is changed.

In Francis v. Schoellkopf, supra, cited in the opinion of Mr. Justice Garretson, there was evidence to show inability to rent one of the two houses which were the subject of the litigation, and a diminished rent of the other by reason of the nuisance created by the defendant.

In Colrick v. Swinburne, supra, also cited in the opinion of Mr. Justice Garretson, the plaintiff's own use of the property was impaired by the diversion of water from its natural channel, and the court said (pages 506, 507, 105 N. Y., and pages 427, 428, 12 N. E.):

"The proper rule of damages, under the circumstances, was the diminished rental value of the tannery premises for the purposes of that business during the period of diversion. The rental value of land is a fact ascertainable with reasonable certainty, and is the basis upon which damages are frequently awarded."

Woolsey v. Railroad Co., 134 N. Y. 323, 30 N. E. 387, 31 N. E. 891, announced the principle that an owner in possession, who did not offer his premises for rent, but used them in his own business, and did not prove any damages to his business by the railroad structure, was still entitled to recover for any depreciation in the rental value of the premises occasioned by the elevated structure.

In Kernochan v. Railroad Co., 128 N. Y. 559, 29 N. E. 65, it is said (page 563, 128 N. Y., and page 66, 29 N. E.):

"It is a fundamental proposition that only the party injured by a wrongful act can maintain an action for damages. There may be difficulty in some cases in ascertaining the proper party. The same wrong may occasion injury to several persons, or to separate and distinct interests in the same property. But he only is entitled to maintain an action who can show that his right has been invaded, and to such person or persons only is the wrongdoer bound to make compensation. The owner of real property, so long as he is in possession, and has not leased or created any subordinate interest in the land, plainly is the only person injured by the construction and maintenance of the elevated railway. * * * A reversioner, however, who by his lease has vested the immediate right of possession of the property in the lessee, sustains no legal injury from mere temporary or casual trespasses on the land. Such wrongs affect the possession merely, and are to be redressed at the suit of the tenant. * * * It is obvious, we think, within the authorities, that the lessor in a lease, made after the construction of the elevated railroad, of premises abutting thereon, can maintain an action for

damages for the loss of rents occasioned thereby. The principle that diminished rental value is a basis for awarding damages has been frequently recognized."

This brings us to the question whether the plaintiff Abraham Van Siclen or his tenants are the persons who have suffered damage. Abraham's property consists of three parcels containing 148 acres on the east side of Lincoln avenue. He produced his deeds, and testified that he was in possession of the property described in each deed, and had been since the delivery of the deeds. He also testified:

"I occupy these various pieces of property with the various members of my family and employés. I have five dwellings on that property, and a number of barns, outbuildings, and hothouses there. My hothouses and all my frames probably cover an acre of ground or more. I raise crops in them all winter long."

It appeared that one of the parcels, called a farm, and containing 37 acres, was occupied by Abraham's son. The father says:

"When I speak of my son's farm, I mean the farm that is owned by me and occupied by my son. He pays me rent. He pays me the same rent now that he did two years ago. The rent never has been changed. He pays me a nominal rent. He has paid me the same rent all along. They hire all my land. I gave up farming. Four years ago I gave up the farm. * * * I am not doing business myself at all. My son is doing it. * * * My sons do not work my farm on shares for me. They hire it of me. * * * It was nominal rent. I don't get any rent for my property comparatively to what it was. Nominal rent I get. I let them work the farm and make out of it what they can."

It is evident that Abraham is really in control of the entire property. He is 75 years of age, and, while he permits his sons to occupy and cultivate portions of it, he resides in and cultivates the other parts of the premises. No lease for any definite term of any part of the premises is shown, and I think there is no such severance of a term from the ownership as is contemplated in the above-quoted language of the court in the Kernochan Case. It seems evident that the sons, who occupy a part of the premises on a nominal rent, and make what they can out of the cultivation, are not in a position to recover any damages.

In the Kernochan Case, supra, a lease for a term of years was executed after the building of the elevated railroad, and the tenant was in exclusive occupation of the premises. The court said (page 565, 128 N. Y., and page 66, 29 N. E.):

"It would be an unnatural and violent presumption that the lessor intended to exact or that the lessee intended to pay rent measured by the value of the use of the premises without the railroad. on the supposition that it would be removed during the term. On the contrary, it is undoubtedly true that the rent reserved in leases like this represents in the minds of the parties the value of the use of the premises incumbered by the railroad."

In the case at bar there was no leasing for a term of years. The utmost that can be said, so far as the record shows, is that the sons were holding the portions of the premises at a nominal rent, without any definite term, and, indeed, without any actual lease; and it is a fair inference that their occupancy was practically gratuitous, and growing out of their family relationship. They had been holding

under the same conditions before the construction of the sewer was commenced, and there is nothing to show that Abraham could not resume possession at will, and without notice. Such a holding does not seem to fall within the rule laid down in the Kernochan case, supra, where the court said (page 565, 128 N. Y., and page 66, 29 N. E.):

"In determining whether the lessee acquired by his lease the right to recover damages inflicted upon the property by the road during the term, the situation at the time the lease was executed, the terms of the instrument, and the intention of the parties thereto are to be considered."

Certainly there is no evidence to show that Abraham intended to devest himself of anything other than the bare permission to his sons to occupy a part of the premises for their support. Under such circumstances, the father, and not the sons, is entitled to recover whatever damages have been occasioned by the nuisance in question.

The corporation counsel argues that the expert evidence as to damages is unreliable and speculative. It is difficult to see any other method by which the damages could have been established. This evidence was based on the difference in rental value occasioned by leaving the highway in a dangerous condition, and this is in accordance with the method prescribed in Jamieson v. Railway Co., 147 N. Y. 322, 41 N. E. 693. As to the damages sustained by Abraham, the testimony is sufficient to sustain the amount found by the court, even though he did not actually use the whole of the premises. The damages sustained by James, the other plaintiff, who owned a farm on the other side of the road from his father's farm, are sufficiently proved to justify the finding as to him. I think that the judgment should be affirmed.